IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| JOHN DOE 1 *et al.*, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 3:24-cv-00777 |
| ) | District Judge Crenshaw |
| STATE OF TENNESSEE, *et al.*, ) | Magistrate Judge Holmes |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S DISMISSAL OF JOHN DOE 1**

Plaintiffs Disability Rights Tennessee ("DRT"), John Doe 1, John Doe 2, John Doe 3, and Jane Doe 1 filed this proposed class action on behalf of Youth with disabilities incarcerated in Tennessee's juvenile justice system, who are subjected to ongoing civil rights violations by Defendants the State of Tennessee, the Tennessee Department of Children's Services ("DCS"), and DCS Commissioner Margie Quin (collectively, "DCS Defendants"). (Doc. No. 53.)

On September 30, 2025, the Court granted the DCS Defendants' motion to dismiss the claims brought by John Doe 1, based on a finding that John Doe 1 did not have standing at the time that Plaintiffs filed their First Amended Complaint. (Doc. No. 95 at 6–8.) This decision is contrary to binding Sixth Circuit precedent, which holds even when the complaint has been amended, standing must be assessed based on the facts existing on the date the initial complaint was filed. *See, e.g.*, *Patton v. Fitzhugh*, 131 F.4th 383, 392 (6th Cir. 2025). For this reason, Plaintiffs ask that the Court reconsider this portion of its Order under Federal Rule of Civil Procedure 54(b) and reinstate John Doe 1 as a party to this case.

**FACTUAL AND PROCEDURAL BACKGROUND**

John Doe 1, together with DRT, John Doe 2, and Jane Doe 1, initiated this action by filing an initial complaint on June 26, 2024. (Doc. No. 1.) Plaintiffs filed an amended complaint on November 22, 2024. (Doc. No. 53.) At the outset of this case, John Doe 1 was under the age of eighteen and had only been out of DCS's physical custody for a few months. (Doc. No. 1 ¶ 37; Doc. No. 53 ¶ 41.) John Doe 1 has a long history of involvement with DCS and numerous risk factors for reentry: he first entered DCS custody at the age of eleven; he experienced severe trauma both before and during that custody; and he has diagnoses of depression, PTSD, ADHD, and anxiety disorder, along with a history of suicidal ideation and self-harm. (Doc. No. 53 ¶¶ 18, 37–41, 265, 362–63, 460, 504–32). During the years he spent in DCS custody, he did not receive adequate and appropriate mental health treatment and was subjected to severe violence and abuse, including solitary confinement, violent assaults by other youth, deprivation of education, and retaliation when he tried to seek help by filing a grievance. *Id.* At the time he instituted this action, John Doe 1 was still a minor who was at imminent risk of reentering DCS custody. *Id.* ¶ 41.

DCS filed a motion to dismiss on January 13, 2025. (Doc. No. 61.) As relevant to this motion for reconsideration, DCS Defendants argued that John Doe 1's claims should be dismissed for lack of standing. (Doc. No. 62 at 26–28.) Plaintiffs filed a response in opposition to DCS Defendants' motion to dismiss on February 18, 2025, arguing that John Doe 1 had standing at the time the complaint was filed. (Doc. No. 66 at 6–9.) Although DCS Defendants did not move to dismiss on the basis of mootness, Plaintiffs also explained why John Doe 1's claims are subject to the inherently transitory exception to mootness. (*Id.* at 9–11.) DCS Defendants filed a reply on March 4, 2025, reiterating their position that John Doe 1 lacked standing and arguing for the first time, in a footnote, that his claims were moot. (Doc. No. 67 at 2–3.)

2

On September 30, 2025, the Court entered an order denying DCS Defendants' motion to dismiss in part, but granting its motion to dismiss John Doe 1's claims for lack of standing.[1] (Doc. No. 95.) The Court noted that while it "may be true" that John Doe 1 "*had* standing when the original complaint was filed on June 26, 2024," he did not have standing when the amended complaint was filed on November 22, 2024. (*Id.* at 6–7.) The Court therefore granted DCS Defendants' motion to dismiss John Doe 1 for lack of standing. (Doc. No. 95.) Because binding Sixth Circuit authority requires that standing be assessed at the time an action is initiated, Plaintiffs now move for reconsideration of that decision.

## LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). It is within a district court's discretion to reconsider an interlocutory order when there is "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Luna v. Bell*, 887 F.3d 290, 297 (6th Cir. 2018) (quoting *Louisville/Jefferson Cnty. Metro. Gov't v. Hotels.com*, 590 F.3d 381, 389 (6th Cir. 2009)). "A 'clear error of law' occurs where the original ruling 'overlooked or disregarded' some 'argument or controlling authority' or where the moving party 'successfully points out a manifest error . . . .'" *Williams v. Mitchell*, No. 1:99-cv-438, 2023 WL 2696177, at *4 (S.D. Ohio Mar. 29, 2023) (quoting *Penley v. NPC Int'l*, No. 13-1031, 2014 WL 12634410, at *2 (W.D. Tenn. Dec. 3, 2014)). Manifest injustice is present when there is "a fundamental flaw in the court's decision that without correction would lead to a result that is both

---

[1] The Court also dismissed Plaintiffs' Counts Six and Ten. (Doc. No. 95 at 20–21.) Plaintiffs do not seek reconsideration of that portion of the Court's decision.

3

inequitable and not in line with applicable policy." *Id.* at *5 (quoting *Williams v. Shelby Cnty. Bd. of Educ.*, No. 217CV02050, 2021 WL 698861, at *3 (W.D. Tenn. Feb. 23, 2021)).

## ARGUMENT

I. **The Court's Application of the Wrong Legal Standard in Dismissing John Doe 1's Claims Was a Clear Error of Law**

In March 2025, the Sixth Circuit reaffirmed the well-established principle that "the initial complaint provides the date by which [the Court] must measure [a plaintiff's] standing." *Patton v. Fitzhugh*, 131 F.4th 383, 392 (6th Cir. 2025). This conclusion is supported by a long line of binding authority:

> "Our review of Supreme Court and Sixth Circuit case law informs us that . . . standing does not have to be maintained throughout all stages of litigation. Instead, it is to be determined as of the time the complaint is filed." *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 524 (6th Cir. 2001). "In essence, standing concerns only whether a plaintiff has a viable claim that a defendant's unlawful conduct 'was occurring at the time the complaint was filed,' while mootness addresses whether that plaintiff continues to have an interest in the outcome of the litigation." *Id.* at 525 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 184, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)). Accordingly, "[s]tanding is determined at the time the complaint is filed." *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 559 (6th Cir. 2021) (quoting *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 580 (6th Cir. 2012)). However, "[t]he mootness inquiry must be made at every stage of a case[.]" *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc). Thus, "if a plaintiff possesses standing from the start, later factual changes cannot deprive the plaintiff of standing. Those changes instead will create 'mootness' issues and trigger that doctrine's more forgiving rules." *Fox* [*v. Saginaw County*, 67 F.4th 284, 295 (6th Cir. 2023)] (internal citation omitted). Under our precedent, when a plaintiff has filed an amended complaint, standing is measured by when the plaintiff initiated the suit, but as explained by allegations in the operative complaint. *Lynch v. Leis*, 382 F.3d 642, 647 (6th Cir. 2004); *accord Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 36–37, 145 S.Ct. 41, ___ L.Ed.2d ___ (2025). Other circuits employ this same approach, measuring standing by the date of the initial complaint. *See, e.g., S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1152–53 (10th Cir. 2013) (citing *Lynch*, 382 F.3d at 647); *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 803 (9th Cir. 2020); *Lutter v. JNESO*, 86 F.4th 111, 125 (3d Cir. 2023) (citing *Conolly v. Taylor*, 27 U.S. (2 Pet.) 556, 565, 7 L.Ed. 518 (1829)).

*Patton*, 131 F.4th at 391–92.

Relying on contrary reasoning in *Bare v. Cardinal Health, Inc.*, Case No. 22-5557, 2023 WL 395026, at *2 (6th Cir. Jan. 25, 2023) (citing *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007)), this Court analyzed John Doe 1's standing "based on the facts that exist[ed] at the time the amended complaint [wa]s filed." (Doc. No. 95 at 6.) But *Bare*, an unpublished panel opinion, did not overrule the long line of precedents cited above. 6th Cir. R. 32.1(b) ("A published opinion is overruled only by the court en banc."). Nor did *Rockwell*, which held that jurisdiction should be assessed based on the <u>allegations</u> in the amended complaint, but affirms that "subject-matter jurisdiction 'depends on the state of things at the time of the action brought.'" 549 U.S. at 473 (quoting *Mullan v. Torrance*, 9 Wheat. 537, 539, 6 L.Ed. 154 (1824)).

Factual changes in a plaintiff's circumstances after an action has been initiated do not impact his standing; rather, they go to **mootness**, which is governed by "'more forgiving rules[,]'" including exceptions that allow cases to be heard where there is an important interest in deciding the issue. *Patton*, 131 F.4th at 392 (quoting *Fox*, 67 F.4th at 295). Courts do not apply these mootness exceptions when determining whether a party has standing. *Id.* For that reason, assessing standing as of the date an *amended* complaint was filed would lead to manifest injustice by dismissing claims that fall within an exception to mootness—and thus would otherwise be heard—merely because the party asserting them filed an amended pleading. *See id.* (reversing district court's ruling that plaintiff lacked standing at time of amended complaint and holding that claims should go forward under inherently transitory and class action mootness exceptions).

John Doe 1 had standing at the time he initiated this action. (Doc. No. 1 ¶ 37; Doc. No. 53 ¶¶ 18, 37–41, 265, 362–63, 460, 504–32.) The Court should therefore reconsider its decision to dismiss his claims, which was based on the facts that existed at a later date when the Amended Complaint was filed. *See Patton*, 131 F.4th at 391–92. Because of the important policy interests

5

presented by the exceptions to mootness, *see id.* at 393–99, the dismissal of John Doe 1's claims presents a manifest injustice that warrants reconsideration.

**II.     John Doe 1 Had Standing when the Initial Complaint Was Filed**

As articulated in Plaintiffs' opposition to DCS Defendants' motion to dismiss (Doc. No. 66 at 6–9), John Doe 1 had standing at the time the original complaint was filed because he was a minor at risk of reentering DCS custody. An individual's history of institutionalization creates an imminent risk of future commitment that is sufficient to confer standing, even when the individual is not in state custody at the time of filing. *See, e.g.*, *Birl v. Wallis*, 619 F. Supp. 481, 487–88 (M.D. Ala. 1985) (finding that "long-time sufferer of mental disorder who has been hospitalized on numerous occasions" was at imminent risk of being recommitted and therefore had standing to challenge institutional policy).[2]

At the time the initial complaint was filed, there were a variety of avenues through which John Doe 1 could have reentered DCS custody. *See, e.g.*, Tenn. Code Ann. §§ 37-1-131(a)(4), -805 to -806. As a young person with disabilities and a long history of abuse and institutionalization during his formative years, it was very plausible that John Doe 1 could have reentered DCS custody and been subjected to the policies and practices that he challenges in this case. (Doc. No. 53, ¶¶ 5–18, 37–41, 265, 362–64, 460, 504–32). For these reasons, and as otherwise articulated in Plaintiffs' Response in Opposition to DCS Defendants' Motion to Dismiss (Doc. No. 66), John Doe 1's claims should not be dismissed for lack of standing.

---

[2] *Cf. Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 461 (6th Cir. 2020) ("[T]he integration mandate's 'protections would be meaningless if plaintiffs were required to segregate themselves by entering an institution before they could challenge an allegedly discriminatory law or policy that threatens to force them into segregated isolation.' . . . Plaintiffs may thus state a claim by sufficiently alleging that they are at serious risk of institutionalization." (quoting *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1181 (10th Cir. 2003)).

### III. Reconsideration is Necessary Because Dismissal Will Undermine the Policies Behind the Mootness Exceptions, Resulting in Manifest Injustice

DCS Defendants did not move to dismiss John Doe 1's claims based on mootness (Doc. Nos. 61–62), and have not carried their burden to show that they are entitled to dismissal on those grounds. *Cleveland Branch, N.A.A.C.P.*, 263 F.3d at 531 ("The heavy burden of demonstrating mootness rests on the party claiming mootness."). Furthermore, an examination of John Doe 1's claims illuminates why dismissal would be "'both inequitable and not in line with applicable policy'"—here, the policy behind the mootness exceptions. *Williams v. Mitchell*, 2023 WL 2696177, at *5 (quoting *Williams v. Shelby Cnty. Bd. of Educ.*, 2021 WL 698861, at *3).

As Plaintiffs articulate in their opposition to DCS Defendants' Motion to Dismiss, John Doe 1's claims fall under the inherently transitory exception to mootness. (Doc. No. 66 at 9–11.) Youth like John Doe 1 cycle into and out of DCS custody frequently and unpredictably, making it uncertain and highly unlikely that *any* plaintiff would remain in DCS custody for the entire pendency of litigation. (*See, e.g.*, Doc. No. 53 ¶¶ 40–41, 116–119, 267–68, 504–32.)

This Court has recognized that the inherently transitory exception applies in the similar circumstances of proposed civil rights class actions filed by incarcerated individuals. *See, e.g.*, *Dodson v. Corecivic*, No. 3:17-cv-00048, 2018 WL 4800836, at *4–5 (M.D. Tenn. Oct. 3, 2018). Cases involving juvenile detention, where age combines with the time-limitations of detention to amplify the risk that a plaintiff's claims will be mooted during litigation, are a paradigmatic example of matters in which the inherently transitory exception is necessary to ensure that civil rights violations do not evade review merely because potential plaintiffs are released or age out of the juvenile system. *See A.T. v. Harder*, 298 F. Supp. 3d 391, 409 (N.D.N.Y. 2018) (applying inherently transitory exception to claims of detained young people); *G.R.X. ex rel. H.R.X. v. Foxhoven*, No. 417-CV-00417, 2018 WL 4701869, at *3–4 (S.D. Iowa June 28, 2018) (same); *cf.*

*Jonathan R. ex rel. Dixon v. Justice*, 41 F.4th 316, 326 (4th Cir. 2022) (applying inherently transitory exception to claims of young people in the foster care system); *Wyatt B. v. Kate Brown*, No. 6:19-CV-00556-AA, 2022 WL 3445767, at *22 (D. Or. Aug. 17, 2022) (same); *J.D. v. Azar*, 925 F.3d 1291, 1311–12 (D.C. Cir. 2019) (applying inherently transitory exception to claims of young people in the custody of the Office of Refugee Resettlement).

Reconsideration of the Court's decision to dismiss John Doe 1 is necessary to satisfy the policy goals behind the inherently transitory exception. The Court should reinstate John Doe 1 as a party so that he can continue to hold DCS Defendants accountable for their violations on behalf of the proposed "other class members" who are still "suffering the [kinds of] injur[ies]" he experienced while in custody. *See Wilson v. Gordon*, 822 F.3d 934, 945 (6th Cir. 2016).[3]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to reconsider its September 30, 2025 decision to dismiss John Doe 1's claims, apply the standard articulated in *Patton v. Fitzhugh*, 131 F.4th 383, 392 (6th Cir. 2025), and reinstate John Doe 1 as a party to this action. This relief is necessary to serve the important policies behind the exceptions to the mootness doctrine and to ensure that the violations alleged in Plaintiffs' First Amended Complaint do not evade review due to the inherently transitory nature of juvenile detention.

Dated: October 8, 2025

Respectfully submitted,

---

[3] The fact that a class has not yet been certified does not change this analysis. *Patton*, 131 F.4th at 398 (holding "that the filing of a class-action complaint can serve as the prerequisite for arguing the 'inherently transitory' exception for class-action claims.").

/s/ Jonathan Tepe
Jonathan Tepe (TN BPR #037266)
Kasi Wautlet (TN BPR #038688)
David McNamee (TN BPR #038124)
**SANFORD HEISLER SHARP McKNIGHT, LLP**
611 Commerce Street, Suite 3100
Nashville, TN 37203
Phone: (615) 434-7000
jtepe@sanfordheisler.com
kwautlet@sanfordheisler.com
dmcnamee@sanfordheisler.com

David Tracey*
**SANFORD HEISLER SHARP McKNIGHT, LLP**
17 State Street, 37th Floor
New York, NY 10004
Phone: (646) 512-8609
dtracey@sanfordheisler.com

Shannon Henris*
**SANFORD HEISLER SHARP McKNIGHT, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Phone: (202) 221-4003
shenris@sanfordheisler.com

Jack Derryberry, Jr. (TN BPR #003870)
**DISABILITY RIGHTS TENNESSEE**
2 International Plaza, Suite 825
Nashville, TN 37217
Phone: (615) 298-1080
jackd@disabilityrightstn.org

Bruce H. Little (TN BPR #037289)
Jeremiah Jones (TN BPR #040551)
9050 Executive Park Drive, Suite B-101
**DISABILITY RIGHTS TENNESSEE**
Knoxville, TN 37923
Phone: (865) 670-2944
brucel@disabilityrightstn.org
jeremiahj@disabilityrightstn.org

Jasmine Miller (TN BPR #039598)

Stuart Seaborn\*  
Emily Satifka\*  
**YOUTH LAW CENTER**  
832 Folsom Street, Suite 700  
San Francisco, CA 94107  
Phone: (415) 413-0174  
jmiller@ylc.org  
sseaborn@ylc.org  
esatifka@ylc.org  

*Attorneys for Plaintiffs*

\*Admitted *Pro Hac Vice*

# CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of October, 2025, a true and exact copy of the foregoing has been forwarded via the District Court's electronic filing system to:

Jay C. Ballard, BPR #17242
Senior Deputy Attorney General
**Office of the Tennessee Attorney General**
P.O. Box 20207
Nashville, TN 37202
Jay.Ballard@ag.tn.gov

Jonathan P. Lakey, BPR #016788
Sarah E. Stuart, BPR #035329
Cherylann M. Pasha, BPR #041945
**Burch Porter & Johnson, PLLC**
130 North Court Avenue
Memphis, TN 38103
jlakey@bpjlaw.com
sstuart@bpjlaw.com
cpasha@bpjlaw.com

*Counsel for State of Tennessee, Tennessee Department of Children's Services, and Margie Quin*

Mary McCullohs, BPR #026467
Meghan Murphy, BPR #34061
David Lester Wickenheiser, BPR #40427
**Office of the Tennessee Attorney General**
P.O. Box 20207
Nashville, TN 37202
mary.mccullohs@ag.tn.gov
meghan.murphy@ag.tn.gov
david.wickenheiser@ag.tn.gov

*Counsel for Lizzette Gonzalez Reynolds*

*/s/ Jonathan Tepe*
Jonathan Tepe