IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN DOE 2, ET AL., | ) |
| Plaintiffs, | ) Docket No. 3:24-cv-00777 |
| v. | ) District Judge Crenshaw |
| | ) Magistrate Judge Holmes |
| STATE OF TENNESSEE, ET AL. | ) |
| Defendants. | ) |

### DCS DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE DISMISSAL OF JOHN DOE 1

On September 30, 2025, the Court granted the Defendants' Motions to Dismiss the claims of Plaintiff John Doe 1, finding that John Doe 1 lacked standing at the time the Amended Complaint was filed. (DE No. 96).[1] On October 8, 2025, Plaintiffs (and John Doe 1) filed a Motion for Reconsideration in light of the Sixth Circuit's decision in *Patton v. Fitzhugh*, 131 F.4th 383, 392 (6th Cir. 2025). (DE No. 105). On October 12, 2025, the Court directed Defendants to file a response that addresses the following: "1) the conflict between *Bare* and *Patton* and its effect on the Court's dismissal order; and 2) the issue of whether John Doe 1's claims are moot,

---

[1] On June 6, 2024, Plaintiffs Disability Rights Tennessee ("DRT"), John Doe 1, John Doe 2, and Jane Doe 1 filed a proposed class action ("Original Complaint" or "Compl.") against Defendants including the State of Tennessee, the Tennessee Department of Children's Services ("DCS"), and DCS Commissioner Margie Quin (collectively, "DCS Defendants"). (DE No. 1). On October 25, 2024, DCS Defendants filed a Motion to Dismiss Complaint and Motion to Dismiss Class Allegations ("First Motion to Dismiss"). (DE No. 47). Plaintiffs, with the addition of John Doe 3, filed a First Amended Class Action Complaint on November 22, 2024 (DE No. 53) ("Amended Complaint" or "Am. Compl."), which caused the Court to terminate without prejudice DCS Defendants' First Motion to Dismiss as moot. (DE No. 57). On January 13, 2025, DCS Defendants filed a Motion to Dismiss the Amended Complaint. (DE No. 61).

notwithstanding the 'inherently transitory exception' that Plaintiffs raise in their brief." (DE. No. 107).

As more fully explained below, the Court's underlying decision dismissing John Doe 1 is correct and unaffected by *Patton,* and thus the Court should deny Plaintiffs' Motion for Reconsideration, because unlike the plaintiff in *Patton*, John Doe 1 lacked standing to bring this suit at the time of the filing of the Original Complaint. Moreover, even if John Doe 1 had standing at the time of the filing of the Original Complaint, his claims have otherwise become moot as he is not in DCS custody and, as the Court has already determined, in light of his age he has no likelihood of returning to DCS custody in the future.

## RELEVANT FACTS IN THE PRESENT CASE AND IN *PATTON*

**A. Facts in Present Case.**[2]

At the time of the filing of the Original Complaint, John Doe 1 was seventeen years old, was no longer in DCS juvenile justice custody, had been adopted after his exit from DCS juvenile justice custody, and was living in the custody of his adoptive mother, *not* DCS. (Compl., DE No. 1 ¶¶ 37, 38, 39). Moreover, there is no allegation that John Doe 1 reentered DCS's custody following his adoption or the filing of the Original Complaint. Thus, John Doe 1 has not been in DCS custody at any time during the pendency of this lawsuit.

Importantly for this case, *all* of Plaintiffs' claims against DCS concern the alleged treatment of children with disabilities while in DCS's juvenile justice ("JJ") custody, who are placed at DCS licensed or approved facilities from which they cannot leave on their own.[3] These children are committed to DCS JJ custody only by virtue of judicial findings that such children are unruly or

---

[2] These facts are taken from the Complaint and Amended Complaint for purposes of this response and are not otherwise admitted.
[3] *See* Amended Complaint at ¶ 1, 18, 697, 730-854.

have committed a delinquent act. JJ custody is distinct and different from another category of DCS "custody," which is not at issue, applicable to children who have suffered from abuse or neglect, which is referred to as Dependency & Neglect ("D&N") custody.[4] The Complaint does not contain any allegations regarding the treatment of any children (neither Plaintiffs, nor putative class members) while such children were in D&N custody but not also in JJ custody; there is no dispute that D&N custody is not at issue in the instant litigation.

The Original Complaint did not contain any allegations that at the time of filing, John Doe 1 was facing new charges of unruly or delinquent acts, or that he had committed any acts that would likely lead to an adjudication and his re-commitment to DCS JJ custody.

By the time of the filing of the Amended Complaint, John Doe 1 was eighteen years old, continued to not be in DCS JJ custody, and in fact remained living with his adoptive mother. (Am. Compl., DE No. 53 ¶¶ 37, 39). Just like the Original Complaint, the Amended Complaint does not contain any allegations that at the time of filing John Doe 1 was facing new charges of unruly or delinquent acts, or that he had committed any acts that would likely lead to an adjudication and his re-commitment to DCS JJ custody.

**B. Facts in *Patton*.**

The plaintiff in *Patton* filed a putative class action in this Court, asserting various violations of his constitutional rights, while he was in pre-trial custody in a Rutherford County jail as a result of charges for drug and firearm offenses. 131 F.4th at 388. At the time he filed his complaint, on June 22, 2023, the plaintiff (unlike John Doe 1 in the present case) was still in pre-trial custody at the Rutherford County jail. *Id.* at 389. On September 27, 2023, the plaintiff filed an amended

---

[4] T.C.A. §§ 37-1-131, 37-1-132, and 37-1-114. Pursuant to statute, Juvenile Justice is a separate division of DCS with its own designated deputy commissioner. T.C.A. § 37-5-101(b).

complaint, which was largely the same as the initial complaint, except that by that time the plaintiff had pled guilty to two charges and was sentenced to ten years of probation. *Id.*

The defendants filed a motion to dismiss on the grounds of mootness, given that the plaintiff had been released. The district court granted the motion, which was reversed by the Sixth Circuit on appeal. *Id.* at 398.

## LAW AND ARGUMENT

Plaintiffs contend that this Court should reconsider its dismissal of John Doe 1 in light of *Patton*, which they claim implicitly overruled *Bare v. Cardinal Health, Inc.*, No. 22-5557, 2023 WL 395026 (6th Cir. Jan. 25, 2023), a case cited in the DCS Defendants' Motion to Dismiss. According to Plaintiffs, *Patton* controls and requires that the determination of standing be made at the time of the Original Complaint, not at the time of the Amended Complaint.

### A. John Doe 1 Lacked Standing at the Time the Original Complaint was Filed.

Most significantly, the Court need not address the suggested conflict between *Bare* and *Patton* because unlike the plaintiff in *Patton*, John Doe 1 lacked standing at the time the Original Complaint was filed.[5] To establish standing regarding the claims asserted against the DCS Defendants, John Doe 1 must have suffered an injury that is traceable to the DCS Defendants and redressable by the Court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).[6] Because John

---

[5] While for purposes of this Response only Defendants assume that *Patton* controls, that decision arguably conflicts with Supreme Court precedent. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 36 (2025) ("Courts . . . look to the amended complaint to determine jurisdiction. That complaint is now the operative one; the old complaint has become irrelevant. So unless the withdrawn allegations were replaced by others giving the court adjudicatory power, the plaintiff's amendment will defeat jurisdiction.") (citation and internal quotation marks omitted). The panel in *Bare* acknowledged, however, that *Bare* did not raise the question of whether the court should discern standing as of the original complaint and that *Bare* therefore forfeited that argument. 2023 WL 395026, at *3.

[6] Defendants raised the issue of John Doe 1's standing in their original Motion to Dismiss and, therefore, have not forfeited or waived this position. (DE No. 47 at PageID 399–400.)

4

Doe 1 seeks only declaratory or injunctive relief, he was required to establish standing through allegations sufficient to state a plausible claim that he suffered from "a present ongoing harm or imminent future harm." *Shelby Advoc. For Valid Elections v. Hargett*, 947 F.3d 977, 981 (6th Cir. 2020) (per curiam); *see also Mikel v. Quin*, 58 F.4th 252, 258 (6th Cir. 2023).

"[W]hen a plaintiff seeks prospective relief, such as an injunction, the plaintiff must establish a sufficient likelihood of future injury." *FDA. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 381 (2024). As a result, to establish standing, John Doe 1's "allegation of future injury" must be "certainly impending" or there must be a "substantial risk that the harm will occur." *J.A. by and through S.A. v. Williamson Cty. Bd. of Educ.*, 731 F. Supp. 3d 938, 946 (M.D. Tenn. 2024) (citations omitted). Establishing standing "tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation for the consequences of judicial action." *Id.*

Plaintiffs have claimed that a "substantial risk" of future injury to John Doe 1 existed at the time of the filing of the Original Complaint because he faced a "credible threat of harm" and was "a minor at risk of reentering DCS custody."[7] (Pls.' Resp., DE No. 66 at PageID 748; Motion for Reconsideration, DE 105-1 at PageID 1171). These are insufficient allegations, however, to support an "allegation of future injury" that is "certainly impending" or a "substantial risk that the harm *will* occur." *J.A.*, 731 F. Supp. 3d at 946 (emphasis added). Moreover, at the time of the filing of the Original Complaint, John Doe 1 was seventeen, was no longer in DCS custody (JJ or

---

[7] Plaintiffs improperly rely in their Motion for Reconsideration and supporting memorandum on facts not alleged in the Original Complaint or the Amended Complaint. (*See* DE No. 105-1 PageID 1171). This Court should decline to consider those alleged facts. *See Eye Ctrs of Am., LLC v. Series Protected Cell 1*, 583 F. Supp. 3d 1105, 1113 (M.D. Tenn. 2022).

5

D&N), had been adopted since his exit from DCS JJ custody, and was living in the custody of his adoptive mother. (Compl., DE No. 1 ¶¶ 37, 38, 39).

Plaintiffs argue John Doe 1's status as a minor is sufficient to establish a risk of imminent harm, relying primarily on *Birl v. Wallis*, 619 F. Supp. 481 (M.D. Ala. 1985), which involved an adult plaintiff that the Court determined was likely to face a continuing threat of involuntary commitment (as opposed to juvenile justice post-adjudication custody). Plaintiffs allege, without any factual support, that when the Original Complaint was filed, he was at "imminent risk of being in DCS custody and/or kept in a DCS-licensed or approved facility from which he could not leave on his own." (*Id*. ¶ 41). This is purely a conclusory allegation, not supported by any other factual allegation, and should not be accepted as true for purposes of the Court's consideration of the motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Moreover, as noted above, the term "DCS custody" used by Plaintiffs in this allegation could mean either DCS JJ custody or DCS D&N custody, with the former type at issue in this case and the latter type not at issue. The term "kept in a DCS-licensed or approved facility from which he could not leave on his own" is synonymous with DCS JJ custody. Importantly, to be committed to DCS JJ custody there must be some adjudication that the child committed an unruly or delinquent act and that the child should be committed to DCS JJ custody. *See* Tenn. Code Ann. §§ 37-1-131, 132.

Critically, nothing in the Original Complaint plausibly alleges a serious risk of John Doe 1's returning to DCS *juvenile justice* custody arising from a *new adjudication of delinquency and commitment*. (*See* Compl., DE No. 1 ¶¶ 37, 38, 39.) There exists no allegation that John Doe 1 was detained or accused of an offense that could lead to another adjudication that he committed a delinquent or unruly act. No fact supports a plausible allegation that, under the circumstances of

his exit, age, and adoption, that he was even likely to return to DCS JJ custody, much less that a future injury was certainly impending. Further, even if due to his circumstances John Doe 1 may have been at imminent risk of entering DCS ***D&N custody***, that would not give him standing because D&N custody is not at issue in this case.

Plaintiffs' baseless, conclusory allegations that John Doe 1 will re-enter DCS **JJ** custody are insufficient, because "[p]ast trouble with the law does not establish standing to challenge future illegal law enforcement or criminal prosecution." *Wallis*, 619 F. Supp. at 487. *See also O'Shea v. Littleton*, 414 U.S. 488, 498 (1974) (finding a plaintiff lacks standing when the "prospect of future injury rests on the likelihood that respondents will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners"); *Patton*, 131 F.4th at 393 ("[I]t is inappropriate to assume that an individual will not 'conduct their activities within the law and so avoid prosecution and conviction.'").

Additionally, John Doe 1 cannot attain standing to seek equitable relief based on the harms that may occur to potential members of an alleged class that has not been certified. *See O'Shea*, 414 U.S. at 494 ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.") (citations and footnote omitted); *Williams v. City of Cleveland*, 907 F.3d 924, 934 (6th Cir. 2018) (status of putative class members does not cure lack of standing where named plaintiff does not have "a live, actionable claim for injunctive relief at the time [he] filed suit.") (citation omitted). *See also*, *Campbell v. Miller*, 373 F.3d 834, 836 (7th Cir. 2004) (holding that where a district court has yet to certify a class, plaintiff may not rely on "the prospect that other arrested persons may be subjected" to the same treatment he is now challenging as unconstitutional); *Yachnin v. Village of Libertyville*, 803 F.Supp.2d 844, 850 (N.D. Ill. 2011)

(refusing to allow plaintiff, for purposes of standing, to represent all persons arrested or all persons who may be arrested in the future pursuant to a particular policy, when the class was not yet certified).

**B.      Even if John Doe 1 Has Standing, His Claims are Moot.**

Assuming *arguendo* that John Doe 1 had standing at the time of filing the Original Complaint, his claims have otherwise become moot, as he is no longer in DCS custody and, as the Court has already found, has no likelihood of returning to DCS custody due to his age. *See* Tenn. Code Ann. § 37-1-102(b)(5) (defining "child," as applicable in the delinquency and unruly statutes, to a person under 18 years of age; and clarifying that a "child" may be a 19-year-old person for delinquent acts committed or a non-custodial orders of disposition entered *prior to* the child's 18th birthday); *C.C. ex rel. Ward v. State of Tennessee,* 2010 WL 3782232, at *7 n.2 (M.D. Tenn. Sept. 21, 2010) (finding a juvenile who had turned eighteen since the filing of the complaint could not seek prospective injunctive relief because he was not at imminent risk of returning to Wilder).

"An incarcerated person's claim for prospective injunctive relief is moot once that person is no longer housed at the facility where the alleged violation occurred." *Id.* at *7 (citation omitted). Since Plaintiff is no longer in juvenile justice custody and cannot return to it, John Doe 1's claims are moot and should be dismissed.

Plaintiffs argue that John Doe 1's claims are not moot because the "inherently transitory" exception to mootness applies. "Courts have distilled . . . two requirements for the 'inherently transitory' exception to apply: (1) that the injury be so transitory that it would likely evade review by becoming moot before the district court can rule on class certification, and (2) that it is certain other class members are suffering the injury." *Patton*, 131 F.4th at 396. The question of whether

the "inherently transitory" exception applies is a question of law and relies on the facts as alleged in Plaintiffs' Amended Complaint.[8]

DCS Defendants agree that Plaintiffs have alleged other class members are suffering similar injuries as John Doe 1. However, DCS Defendants disagree that the first requirement has been met. Plaintiffs argue that "Youth like John Doe 1 cycle into and out of DCS custody frequently and unpredictably, making it uncertain and highly unlikely that any plaintiff would remain in DCS custody for the entire pendency of the litigation." But, under Plaintiff's proposed class definition, which includes "young people . . . at imminent risk of being, in DCS custody and/or kept in a DCS-licensed or approved facility from which they cannot leave on their own," an exit from DCS custody (rendering their claims moot) would not necessarily rule them out as a class member. (See Am. Compl. ¶ 697).

"The 'inherently transitory' rationale was developed to address circumstances in which the challenged conduct was effectively unreviewable because *no plaintiff* possessed a personal stake in the suit long enough for the litigation to run its course." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 76 (2013) (emphasis added). Because other plaintiffs remain at this point in the litigation, John Doe 1's dismissal does not render the challenged conduct "effectively unreviewable." *Id.*

---

[8] A Petition for Writ of Certiorari remains pending in *Patton* on the circuit-split issue of whether under Article III a plaintiff with moot claims can maintain a putative class action pre-certification. *See* Petition for Writ of Certiorari, *Patton* (No. 25-50).

## CONCLUSION

For the foregoing reasons, DCS Defendants respectfully ask the court to deny Plaintiffs' request to reinstate John Doe 1 as a party to this action.

Respectfully Submitted,

/s/ *Jonathan P. Lakey*
Jonathan P. Lakey, BPR #16788
Sarah E. Stuart, BPR #35329
Cherylann Pasha, BPR #41945
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 38103
Tel: (901) 524-5000
Fax: (901) 524-5024
Jlakey@bpjlaw.com
sstuart@bpjlaw.com
cpasha@bpjlaw.com

Jay Ballard (BPR #017242)
Senior Deputy Attorney General
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202
Telephone: 615-741-7630
Jay.Ballard@ag.tn.gov

*Counsel for State of Tennessee, Tennessee Department of Children's Services, and Margie Quin*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of October 2025, a true and exact copy of the foregoing has been sent via the District Court's electronic filing system to the following:

**Sanford Heisler Sharp, LLP**

Jonathan Tepe
Kasi Wautlet
David McNamee
611 Commerce Street, Suite 3100
Nashville, TN 37203
jtepe@sanfordheisler.com
kwautlet@sanfordheisler.com
dmcnamee@sanfordheisler.com

David Tracey*
17 State Street, 37th Floor
New York, NY 10004
dtracey@sanfordheisler.com

Shannon Henris*
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
shenris@sanfordheisler.com

*Attorneys for Plaintiffs*
**Admitted Pro Hac Vice*

**Disability Rights Tennessee**

Jack Derryberry, Jr.
2 International Plaza, Suite 825
Nashville, TN 37217
jackd@disabilityrightstn.org

Jeremiah Jones
Bruce H. Little
9050 Executive Park Drive, Suite B-101
Knoxville, TN 37923
jeremiahj@disabilityrightstn.org
brucel@disabilityrightstn.org

**Youth Law Center**

Jasmine Miller
Emily Satifka*
Stuart Seaborn*
832 Folsom Street, Suite 700
San Francisco, CA 94107
jmiller@ylc.org
esatifka@ylc.org
sseaborn@ylc.org

*Attorneys for Plaintiffs*
**Admitted Pro Hac Vice*

**Tennessee Attorney General's Office**

Meghan Murphy
Mary McCullohs
David Lester Wickenheiser
P.O. Box 20207
Nashville, TN 37202-0207
(615) 253-3890
miranda.jones@ag.tn.gov
meghan.murphy@ag.tn.gov
mary.mccullohs@ag.tn.gov
david.wickenheiser@ag.tn.gov

*Attorneys for Lizzette Gonzalez Reynolds*

/s/ Jonathan P. Lakey
Jonathan P. Lakey