# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| **JOHN DOE 1 et al.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 3:24-cv-00777** |
| | ) | **District Judge Crenshaw** |
| **STATE OF TENNESSEE, et al.,** | ) | **Magistrate Judge Holmes** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE DISMISSAL OF JOHN DOE 1

*Patton v. Fitzhugh* reaffirmed the well-established rule that "standing is determined as of the date of the filing of the complaint[.]" *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 524–25 (6th Cir. 2001) (*citing, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Env't Servs (TOC), Inc.*, 528 U.S. 167, 184 (2000)); *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 580 (6th Cir. 2012) (same).[1] Although *Bare v. Cardinal Health, Inc.*, No. 22-5557, 2023 WL 395026, at *2 (6th Cir. Jan. 25, 2023), was contrary to *Cleveland Branch*, it did not—and could not—overrule the long line of precedent affirming this principle. 6th Cir. R. 32.1(b).[2] Applying the proper

---

[1] *Patton v. Fitzhugh* was decided on March 13, 2025, and thus could not have been included in Plaintiffs' February 18, 2025 responses in opposition to Defendants' motions to dismiss. 131 F.4th 383 (6th Cir. 2025). Further, *Patton* only reaffirmed preexisting authority that Plaintiffs did cite in their response brief. *Compare id.* at 391 ("[Defendants] ask us to assess Patton's standing solely in relation to the amended complaint. Our circuit has already addressed this issue and firmly decided in Patton's favor." (*citing, e.g.*, *Cleveland Branch, N.A.A.C.P. v. Parma*, 263 F.3d 513, 524 (6th Cir. 2001)), *with* Doc. No. 66 at 6 (citing *Cleveland Branch, N.A.A.C.P.*, 263 F.3d at 524).

[2] *Royal Canin U.S.A., Inc. v. Wullschleger* did not change this. 604 U.S 22, 36 (2025). Not only did *Royal Canin* not discuss standing at all, *id.*, the Sixth Circuit has interpreted *Royal Canin* to be consistent with the rule that standing must be assessed based on the facts in existence at the outset of the action. *Patton*, 131 F.4th at 392 (*citing Royal Canin*, 604 U.S. at 36–37).

standard to this case, and "'accept[ing] the allegations set forth in the complaint as true, [and] drawing all inferences in favor of the plaintiff,'" *Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019), the Court should find that John Doe 1 had standing when this action began and that his claims are not moot and fall within the inherently transitory exception to mootness.

## I. John Doe 1 Had Standing at the Outset of This Action

The doctrine of standing is designed to ensure "that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." *Friends of the Earth, Inc.*, 528 U.S. at 191. John Doe 1's stake in this case is indisputably concrete. When this case began, John Doe 1 was a minor "at imminent risk of being in DCS custody and/or kept in a DCS-licensed or approved facility from which he could not leave on his own."[3] (Doc. No. 53 ¶ 41.)[4] This risk was especially heightened due to John Doe 1's mental health conditions (*id.* ¶¶ 37–38, 506–07, 532); history of trauma and abuse, including at the hands of the DCS Defendants (*id.* ¶¶ 18, 40, 362–63, 504–06, 508–26, 531); and Defendants' failure to provide him with appropriate services, education, or treatment necessary to address his mental health needs (*id.* ¶¶ 460, 471, 504, 508, 510, 514–15, 517, 527–30, 532).[5] DCS Defendants ignore these allegations.

---

[3] Contrary to Defendants' assertion (Doc. No. 108 at 6), "kept in a DCS-licensed or approved facility from which he could not leave on his own[,]" as used in the operative complaint, is not synonymous with DCS Juvenile Justice ("JJ") custody, because pre-adjudication Youth are also placed in DCS-licensed or approved facilities, and are therefore subject to DCS's illegal policies and practices even before they are formally transferred into DCS custody. (Doc. No. 53 ¶¶ 40, 106–09, 121, 363, 509–12, 697, 701.) Therefore, the Court should not limit its analysis of John Doe 1's standing to the risk of being adjudicated delinquent or unruly, but should also consider the risk of entering a juvenile justice facility pre-adjudication. (Doc. No. 66 at 6–9; Doc. No. 105-1.)

[4] "[W]hen a plaintiff has filed an amended complaint, standing is measured by when the plaintiff initiated the suit, but as explained by allegations in the operative complaint." *Patton*, 131 F.4th at 392.

[5] Defendants accuse Plaintiffs of relying on facts outside the pleadings in their motion for reconsideration and supporting memorandum, but this is false, and Defendants have not even attempted to identify what any of these supposedly improper facts are. (Doc. No. 108 at 5.)

(*See* Doc. No. 108 at 5–6.) But accepting them as true, John Doe 1 plausibly alleges that he was at risk for reentry into a DCS-licensed or -approved facility, and he therefore has standing. *See Birl v. Wallis*, 619 F. Supp. 481, 487–88 (M.D. Ala. 1985); *Mosley*, 942 F.3d at 758 (reversing where court held plaintiff "to a higher burden of proof than is required at the pleadings stage [to allege standing.]").

To be sure, "past trouble with the law does not," by itself, "establish standing to challenge future illegal law enforcement or criminal prosecution." (Doc. No. 108 at 7 (quoting *Wallis*, 619 F. Supp. at 487). But here, John Doe 1's standing is based not only on such "past trouble," but also on his disabilities, his history of trauma and abuse and their continued effects, Defendants' failures to provide him appropriate services, and his recent discharge from an institution into the home of a brand-new family after a long history of state custody during his formative years. (Doc. No. 53 ¶¶ 18, 37–41, 265, 362–63, 460, 471, 504–32); *Cf. Wallis*, 619 F. Supp. at 488. This context distinguishes John Doe 1 from the adult plaintiffs in *O'Shea v. Littleton*, 414 U.S. 488 (1974), and *Patton* (cited in Doc. No. 108 at 7), all of whom faced a far more remote risk of criminal prosecution. *See Wallis*, 619 F. Supp. at 487 (distinguishing *O'Shea*).

Nor does the absence of class certification affect the analysis, as DCS Defendants argue. (Doc. No. 108 at 7). In DCS Defendants' cited cases, "none of the named plaintiffs purporting to represent a class" had standing. *O'Shea*, 414 U.S. at 494. Here, by contrast, the Court has already found several named plaintiffs have standing. (Doc. No. 95 at 8–10.) Thus, "the identical claims brought by [John Doe 1] are justiciable." *Phillips v. Snyder*, 836 F.3d 707, 714 (6th Cir. 2016); *accord Rumsfeld v. Forum for Academic & Inst. Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006); *see also Doe 1 v. Mich. Dep't of Corr.*, No. 13-14356, 2014 WL 2207136, at *5 (E.D. Mich. May 28, 2014)

(allowing all plaintiffs' claims for injunctive relief related to their juvenile incarceration to proceed because at least two of the seven plaintiffs were minors at the time they filed the action).

## II. John Doe 1's Claims Are Not Moot

DCS Defendants have not carried their burden to show that John Doe 1's claims are moot.

First, contrary to DCS Defendant's arguments, no bright-line rule automatically moots a plaintiff's claims for injunctive relief just because he has exited a juvenile justice facility. In *C.C. ex rel. Ward v. Tennessee*, cited by DCS Defendants, the plaintiff sought an injunction limited to ensuring that discrimination and violence did not occur "at Wilder and other state juvenile detention facilities." No. 3:09-cv-00246, Dkt. 23 at 13 (June 30, 2009). The injunctive relief Plaintiffs seek in this case is not so narrowly limited, and may include changes to the transition services and other community-based services DCS offers to Youth (Doc. No. 53 ¶¶ 17, 173–78, 234, 236–38, 243, 487, 531, 858), which could provide a remedy for the continuing adverse effects of Defendants' actions, even now that John Doe 1 is no longer a minor. *See* Tenn. Code Ann. § 37-2-604(b)–(c) (eff. July 1, 2025) (providing that "youth transitioning from state custody to adulthood" are eligible for transition services until the age of twenty-three).

Second, to the extent that exiting a DCS-licensed or -approved facility or turning 18 moots some or all aspects of John Doe 1's claims, the inherently transitory exception to mootness would apply. That exception governs where (1) "the [alleged] injury [is] so transitory that it would likely evade review by becoming moot before the district court can rule on class certification, and" (2) "it is certain other class members are suffering the injury." *Wilson v. Gordon*, 822 F.3d 934, 945 (6th Cir. 2016)

Here, DCS Defendants only challenge the first prong, arguing that the exception should not apply because *right now*, plaintiffs other than John Doe 1 remain. (Doc. No. 108 at 9.) But that is not the right question. The question is whether this case involves the **type of injury** that is "so

4

inherently transitory in nature that a motion for class certification may not be filed and adjudicated prior to the mooting of **possibly all of the named plaintiffs' claims**." *G.R.X. ex rel. H.R.X. v. Foxhoven*, No. 417CV00417, 2018 WL 4701869, at *2 (S.D. Iowa June 28, 2018) (holding that "challenges to the conditions at juvenile detention centers involve inherently transitory claims"). Juvenile detention is inherently transitory because "'the length of . . . custody cannot be ascertained at the outset'" and plaintiffs are likely to age out of the system before a claim challenging the policies, practices, and procedures that apply to Youth in DCS-licensed or -approved facilities can be fully litigated. *Wilson* 822 F.3d at 945 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 111 n.11 (1975)). At the same time, "'it is certain that other persons similarly situated will be'" subjected to the systemic practices Plaintiffs challenge. *Patton*, 131 F.4th at 395 (*quoting Gerstein*, 420 U.S. at 111 n.11). And "[b]ecause a motion for class certification may relate back to the filing of a complaint, [John Doe 1] must be afforded the fair opportunity to litigate claims on behalf of the class whose interests he seeks to represent." *Id.* at 398.

## III.    Conclusion

For these reasons, and as otherwise articulated in Plaintiffs' response in opposition to DCS Defendants' motion to dismiss (Doc. No. 66) and motion for reconsideration and supporting memorandum (Doc. No. 105–105-1), the Court should reinstate John Doe 1 as a party to this action.


Dated: October 21, 2025

Respectfully submitted,

*/s/ Jonathan Tepe*
Jonathan Tepe (TN BPR #037266)
Kasi Wautlet (TN BPR #038688)
David McNamee (TN BPR #038124)

**SANFORD HEISLER SHARP McKNIGHT, LLP**
611 Commerce Street, Suite 3100
Nashville, TN 37203
Phone: (615) 434-7000
jtepe@sanfordheisler.com
kwautlet@sanfordheisler.com
dmcnamee@sanfordheisler.com

David Tracey*
**SANFORD HEISLER SHARP McKNIGHT, LLP**
17 State Street, 37th Floor
New York, NY 10004
Phone: (646) 512-8609
dtracey@sanfordheisler.com

Shannon Henris*
**SANFORD HEISLER SHARP McKNIGHT, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Phone: (202) 221-4003
shenris@sanfordheisler.com

Jack Derryberry, Jr. (TN BPR #003870)
**DISABILITY RIGHTS TENNESSEE**
2 International Plaza, Suite 825
Nashville, TN 37217
Phone: (615) 298-1080
jackd@disabilityrightstn.org

Bruce H. Little (TN BPR #037289)
Jeremiah Jones (TN BPR #040551)
9050 Executive Park Drive, Suite B-101
**DISABILITY RIGHTS TENNESSEE**
Knoxville, TN 37923
Phone: (865) 670-2944
brucel@disabilityrightstn.org
jeremiahj@disabilityrightstn.org

Jasmine Miller (TN BPR #039598)
Emily Satifka*
Stuart Seaborn*
Diane Smith Howard**
**YOUTH LAW CENTER**
832 Folsom Street, Suite 700
San Francisco, CA 94107
Phone: (415) 413-0174

6

jmiller@ylc.org
esatifka@ylc.org
sseaborn@ylc.org

*Attorneys for Plaintiffs*

*Admitted *Pro Hac Vice*
**Motion for admission *Pro Hac Vice* pending

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of October, 2025, a true and exact copy of the foregoing has been forwarded via electronic mail to:

Jay C. Ballard, BPR #17242
Senior Deputy Attorney General
**Office of the Tennessee Attorney General**
P.O. Box 20207
Nashville, TN 37202
Jay.Ballard@ag.tn.gov

Jonathan P. Lakey, BPR #016788
Sarah E. Stuart, BPR #035329
Cherylann M. Pasha, BPR #041945
**Burch Porter & Johnson, PLLC**
130 North Court Avenue
Memphis, TN 38103
jlakey@bpjlaw.com
sstuart@bpjlaw.com
cpasha@bpjlaw.com

*Counsel for State of Tennessee, Tennessee Department of Children's Services, and Margie Quin*

Mary McCullohs, BPR #026467
Meghan Murphy, BPR #34061
David Lester Wickenheiser, BPR #40427
**Office of the Tennessee Attorney General**
P.O. Box 20207
Nashville, TN 37202
mary.mccullohs@ag.tn.gov
meghan.murphy@ag.tn.gov
david.wickenheiser@ag.tn.gov

*Counsel for Lizzette Gonzalez Reynolds*

_/s/ Jonathan Tepe_
Jonathan Tepe