# EXHIBIT 46

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHN DOE 1, ET AL., | ) | |
| | ) | Docket No. 3:24-cv-00777 |
| Plaintiffs, | ) | |
| | ) | District Judge Crenshaw |
| v. | ) | Magistrate Judge Holmes |
| | ) | |
| STATE OF TENNESSEE, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANTS STATE OF TENNESSEE, TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES, AND MARGIE QUIN'S FIRST SUPPLEMENTAL AND AMENDED RESPONSES TOPLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

---

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants State of Tennessee ("the State"), Tennessee Department of Children's Services ("DCS"), and Margie Quin ("Commissioner Quin") (collectively the "DCS Defendants"), hereby submit their first supplemental and amended responses and objections to Plaintiffs' First Set of Requests for Production of Documents (the "Plaintiffs' First Requests"). DCS's responses are made subject and pursuant to the operative Protective Orders entered by the Court in this case (DE 50, 71) (the "Protective Orders").

**DEFINITIONS**

For purposes of these Responses, the DCS Defendants use the following definitions, in addition to terms defined by Tennessee law, including, but not limited to, Tennessee Code Annotated § 37-5-103. To the extent these definitions conflict with those set forth in Plaintiffs' First Requests, the DCS Defendants are referring to and relying on the below-listed definitions throughout these responses, and are objecting to the definitions propounded by Plaintiffs on the

discoverable. The DCS Defendants further object as overly broad to the request for "communications," which could include almost any employee of DCS discussing the housing of Juvenile Justice Youth, which is unlikely to be of importance in resolving the issues in this case and is unlikely to lead to the discovery of relevant information, and thus the burden or expense of such electronic discovery as to email searches will outweigh its benefit. In addition to extensive targeted productions made by DCS in response to both Request No. 1 and this request, the Parties have agreed to ESI custodians and search terms that are reasonably tailored to target potentially responsive and relevant communications including what Plaintiffs have stated are limited to "communications containing aggregate housing reports." DCS objects to providing additional ESI as the burden and expense of producing additional ESI outweighs the importance of the discovery in resolving the issues and its likely benefit. DCS reserves the right to review all ESI for responsiveness, redactions as are consistent with its objections herein, and attorney-client privilege prior to its rolling production of the same. Subject to these objections and the Protective Orders in this case, the DCS Defendants additionally refer to the documents produced in response to Request No. 1 and to placement reports.

**REQUEST 3:** All Documents and Communications identifying or tracking the number of Youth and/or members of JJ Population as presently or previously having a disability or any diagnosis under the Diagnostic and Statistical Manual of Mental Disorders, including those tracking specific types of disabilities or diagnoses.

**RESPONSE:** The DCS Defendants incorporate Specific Objections 1, 2 and 3 as if stated herein. On the basis of these objections, the DCS Defendants will not produce documents created before March 24, 2022, and will redact non-responsive and non-discoverable information contained in any document produced, as the documents responsive to this request contain PII of

non-Juvenile Justice Youth, foster care homes, parents involved in dependency and neglect proceedings, and other information that is prohibited from disclosure under applicable state and federal law. Subject to these objections, as to documents "identifying" Juvenile Justice Youth consistent with this Request, DCS has produced records from the Population Committee pursuant to the Protective Orders in this case. In addition, individual Juvenile Justice Youth may have responsive information in their TFACTS profile, placement packet, or as reflected in a Child and Family Team Meeting summary, based on a review by the Education Division or a case worker regarding the existence of an Individualized Education Plan ("IEP"), depending on whether (at the applicable time), the DCS Defendants had access to state-wide data on TN Pulse regarding IEPs. The DCS Defendants will produce records from TFACTS in accordance with the response to Request No. 13.

As to communications, DCS is not aware of any communications tracking the aggregate number of Juvenile Justice Youth with a disability but has agreed to ESI custodians and search terms that are reasonably tailored to target potentially responsive and relevant communications. DCS objects to providing additional ESI as the burden and expense of producing additional ESI outweighs the importance of the discovery in resolving the issues and its likely benefit. DCS reserves the right to review all ESI for responsiveness, redactions as are consistent with its objections herein, and attorney-client privilege prior to its rolling production of the same.

**REQUEST 4:** Any Documents tracking the aggregate number of JJ Population, during any portion of the Relevant Time Period, in the following categories:

a. JJ Population with disabilities as defined by the Americans with Disabilities Act of 1990 (including, without limitation, those who are mentally ill, intellectually disabled, or behavior disordered);

b. JJ Population who have ever received any diagnosis under the Diagnostic and Statistical Manual of Mental Disorders;

c. JJ Population who were prescribed psychotropic medications during the Relevant Time Period;

d. JJ Population who are or were eligible for funding under Title IV-E of the 1994 Amendments to the Social Security Act;

e. JJ Population served by the DCS Local Education Agency who were identified as eligible for an Individual Education Plan or 504 plan; or

f. JJ Population who have received Early Periodic Screening, Diagnosis and Treatment services under the TennCare Kids EPSDT program.

**RESPONSE:** The DCS Defendants incorporate Specific Objections 1, 2, and 3 as if stated herein. On the basis of these objections, the DCS Defendants will not produce documents created before March 24, 2022, and will redact non-responsive and non-discoverable information contained in any document produced, as the documents responsive to this request contain PII of non-Juvenile Justice Youth, foster care homes, parents involved in dependency and neglect proceedings, and other information that is prohibited from disclosure under applicable state and federal law. Because the burden of redacting only legally-protected information on the responsive documents is greater than the need for the non-redacted portions, the DCS Defendants will redact in the aggregate information that is not responsive or not discoverable. The DCS Defendants object to providing documents relating to the education of Juvenile Justice Youth or any child that are considered "Education Records" under FERPA until a FERPA notice protocol has been approved by this Court and object to providing documents that are in the possession, custody, or control of the Tennessee Department of Education ("TDOE"), which is also a party to this action.

The DCS Defendants object to sub-section (d) as not relevant to any claim or defense at issue in this litigation but state that IV-E eligibility is a field in TFACTS that can be reviewed in the individual child's profile and will provide an aggregate report noting IV-E eligibility. Subject to these objections and pursuant to the Protective Orders in this case and FERPA notice protocol, the DCS Defendants refer to their response to Request No. 3, and state that (f) can be identified through a review of the "Mega-Report," which identifies all custodial Juvenile Justice Youth, as all Juvenile Justice Youth receive an Early and Periodic Screening, Diagnosis, and Treatment ("EPSDT") upon entry of custody and annually thereafter. The DCS Defendants have identified responsive data since 2023 regarding subsection (e) but have limited possession, custody, or control of aggregate data from the TDOE before that time as to Juvenile Justice Youth who were not at a DCS-ran Local Education Agency. Subsections (a) through (c) are not tracked in an aggregate manner as requested in this document, and, thus, the DCS Defendants would rely on information regarding individual children as described in response to Request No. 3 and to information contained in TFACTS as detailed in Response No. 13. Pursuant to the executed ESI Protocol and the Protective Orders, the DCS Defendants also reserve the right to review any production for attorney-client privilege and will provide a privilege log for any documents withheld on this objection.

**REQUEST 5:** All Documents or Communications indicating or concerning any methodology used by DCS to track and/or calculate the number of Youth with disabilities in DCS custody, as described in Request 3, Request 4, or otherwise.

**RESPONSE:** DCS has been unable to identify Documents responsive to this request as stated, as DCS does not have routine methodology to track and/or calculate the number of Juvenile Justice Youth with disabilities, as described in Request Nos. 3 or 4, other than to identify whether a Juvenile Justice Youth has an IEP, which may or may not be tied to a disability as defined in the

ADA. As to the Communications requested, the DCS Defendants object to the breadth and proportionality of identifying "all communications" regarding the methodology and tracking of the number of Juvenile Justice Youth with disabilities, as defined in these requests. DCS is not aware of any communications responsive to Request No. 5 but has nonetheless agreed to a set of custodians and search terms that may lead to the discovery of responsive communications to Request No. 2, which it reserves the right to review for responsiveness, necessary redactions, and attorney-client privilege, which it will produce in a forthcoming production.

**REQUEST 6:** Documents or Communications regarding how JDCs or any other Facilities or Contract Providers are instructed to identify and track disability.

**RESPONSE:** As to Documents, the DCS Defendants refer Plaintiffs to DCS Policies and Procedures 1.1(C)(4), 19.6, and 20.10, which are publicly available. The DCS Defendants further refer Plaintiffs to Section 8 of the Contract Provider Manual ("CPM"), which is publicly available here: https://www.tn.gov/dcs/for-providers/contract-provider-manual.html. As to Communications, the DCS Defendants incorporate Specific Objections 1, 2 and 3 as if stated herein. On the basis of these objections, the DCS Defendants will not produce documents created before March 24, 2022, and will review for redaction of non-responsive and non-discoverable information contained in any communication produced, as the documents responsive to this request may contain PII of non-Juvenile Justice Youth, foster care homes, parents involved in dependency and neglect proceedings, and other information that is prohibited from disclosure under applicable state and federal law. Because the burden of redacting only legally-protected information on the responsive documents is greater than the need for the non-redacted portions, the DCS Defendants will redact in the aggregate information that is not responsive or not discoverable. The DCS Defendants further object as overly broad to the request for

"communications," which could include review of almost any employee of DCS interacting with Facilities or Contract Providers. The Parties have agreed to ESI custodians and search terms that are reasonably tailored to target potentially responsive and relevant communications. DCS objects to providing additional ESI as the burden and expense of producing additional ESI outweighs the importance of the discovery in resolving the issues and its likely benefit. DCS reserves the right to review all ESI for responsiveness, redactions as are consistent with its objections herein, and attorney-client privilege prior to its rolling production of the same.

**REQUEST 7:** For all Facilities and/or Contract Providers, any Documents (including, without limitation, portions of all policies, procedures, handbooks, guidelines, rules, and requirements) or Communications setting out under what circumstances each measure may and may not be used and required documentation associated with the use of each measure, during the Relevant Time Period:

a. Pepper Spray

b. Solitary Confinement, seclusion, or isolation

c. Mechanical restraint

d. The use of physical force to restrain youth

e. Corporal punishment

f. Violence against youth, whether by staff or other youth.

g. Loss of education at facilities, whether due to the 20 educational days policy, or facility actions, or the signing of refusals to participate in education or any other cause;

h. Deprivation of phone privileges

i. Deprivation of outdoor time

In addition to extensive, targeted productions made by DCS in response to Request No. 20, the Parties have agreed to ESI custodians and search terms that are reasonably tailored to target potentially responsive and relevant communications. DCS objects to providing additional ESI as the burden and expense of producing additional ESI outweighs the importance of the discovery in resolving the issues and its likely benefit. DCS reserves the right to review all ESI for responsiveness, redactions as are consistent with its objections herein, and attorney-client privilege prior to its rolling production of the same. The DCS Defendants further state that information responsive to this request is also protected by the work product privilege and the attorney-client privilege. The DCS Defendants will produce an appropriate privilege log for any documents withheld on this objection as is consistent with the ESI Protocol and Protective Orders in this action.

Respectfully submitted,

/s/ Jonathan P. Lakey
Jonathan P. Lakey, BPR #16788
Sarah E. Stuart, BPR #35329
Cherylann Pasha, BPR #41945
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 38103
Tel: (901) 524-5000
Fax: (901) 524-5024
jlakey@bpjlaw.com
sstuart@bpjlaw.com
cpasha@bpjlaw.com

**Office of the Tennessee Attorney General**

Jay C. Ballard, BPR #17242
P.O. Box 20207
Nashville, TN 37202
Jay.Ballard@ag.tn.gov

*Attorneys for Defendants the State of Tennessee, the Tennessee Department of Children's Services, and Margie Quin*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of July 2025, a true and exact copy of the foregoing has been served via electronic mail to:

**Sanford Heisler Sharp, LLP**

Jonathan Tepe
Kevin Sharp
Kasi Wautlet
David McNamee
611 Commerce Street, Suite 3100
Nashville, TN 37203
jtepe@sanfordheisler.com
ksharp@sanfordheisler.com
kwautlet@sanfordheisler.com
dmcnamee@sanfordheisler.com

David Tracey*
17 State Street, 37th Floor
New York, NY 10004
dtracey@sanfordheisler.com

Shannon Henris*
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
shenris@sanfordheisler.com

*Attorneys for Plaintiffs*
**Admitted Pro Hac Vice*

**Disability Rights Tennessee**

Jack Derryberry, Jr.
2 International Plaza, Suite 825
Nashville, TN 37217
jackd@disabilityrightstn.org

Jeremiah Jones
Bruce Little
9050 Executive Park Drive, Suite B-101
Knoxville, TN 37923
jeremiahj@disabilityrightstn.org
brucel@disabilityrightstn.org

**Youth Law Center**

Jasmine Miller
Emily Satifka*
832 Folsom Street, Suite 700
San Francisco, CA 94107
jmiller@ylc.org
esatifka@ylc.org

Stuart John Seaborn*
3102 Montpelier Court
Pleasanton, CA 94588
sseaborn@ylc.org

*Attorneys for Plaintiffs*
**Admitted Pro Hac Vice*

**Tennessee Attorney General's Office**

Mary McCullohs
Meghan Murphy
David Lester Wickenheiser
P.O. Box 20207
Nashville, TN 37202-0207
(615) 253-3890
mary.mccullohs@ag.tn.gov
meghan.murphy@ag.tn.gov
david.wickenheiser@ag.tn.gov

*Attorneys for Lizzette Gonzalez Reynolds*

/s/ Jonathan P. Lakey
Jonathan P. Lakey